# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

| | |
|---|---|
| **JOANN SCOTT**, <br><br> Plaintiff, <br><br> v. <br><br> **HERSCHEND FAMILY ENTERTAINMENT CORPORATION and HFE VALDOSTA, LLC**, <br><br> Defendants. | Civil Action No. 7:18-CV-67 (HL) |

## ORDER

Plaintiff Joann Scott brings this action against Defendant HFE Valdosta, LLC, doing business as Wild Adventures Theme Park ("Wild Adventures") to recover damages for Plaintiff's injuries. (Doc. 1).[1] Plaintiff alleges that Defendant negligently maintained its premises in violation of Georgia tort law. (*Id.*). The case is before this Court based on diversity jurisdiction. (*Id.*). Before the Court is Defendant's Motion for Summary Judgment. (Doc. 25). After reviewing the briefs and evidentiary materials presented, the Court has determined that Plaintiff has failed to support her claim with sufficient evidence. The Court accordingly **GRANTS** Defendant's motion.

---

[1] Plaintiff also named Herschend Family Entertainment Corporation ("Herschend") as a defendant in her Complaint. (Doc. 1). Plaintiff has since agreed to dismiss Herschend from this case without prejudice. (Doc. 8). Wild Adventures is the sole defendant.

I.   **FACTUAL BACKGROUND**

On May 7, 2016, Plaintiff visited Defendant's Wild Adventures Theme Park with her daughter and grandchildren. (Doc. 25-3, p. 7). They spent the day together at the theme park, and at about 8:00 p.m., they left the theme park area to attend a concert held at the Wild Adventures All-Star Amphitheater. (Doc. 25-4, p. 6). Defendant owns the amphitheater in addition to the theme park. The amphitheater is separate from the rest of the park. (Doc. 29, p. 1). Doors to the amphitheater open an hour before an event is to start. (*Id.*). On the day of Plaintiff's injuries, the amphitheater opened at 7:00 p.m. because the concert began at 8:00 p.m. (*Id.*). No other events took place at the amphitheater earlier in the day. Defendant keeps the amphitheater closed when no event is taking place, so the amphitheater had been closed to the public until 7:00 p.m. (Doc. 25-5, p. 7).

The amphitheater has permanent seating for approximately 2,000 guests plus additional seating on the amphitheater's lawn. (Doc. 29, p. 1). Plaintiff "recalls potentially hundreds of people" at the concert, (Doc. 27, p. 3) while Defendant says that the amphitheater "was full or close to full of guests" (Doc. 29, p. 1). *See also* (Doc. 25-3, p. 8). After the concert, around 10:00 p.m., Plaintiff exited the row where she was sitting and walked toward the amphitheater's exit. (Doc. 25-3, p. 10). Her family members went to the front of

the amphitheater to get an autograph from the performer. (*Id.*). Plaintiff agreed to meet them outside of the amphitheater once they were done. (*Id.*).

As Plaintiff walked alone toward the amphitheater's exit, she fell onto the floor in a row of seating. (*Id.* at pp. 10–12); (Doc. 25-4, p. 10). Plaintiff had left the row where her family sat during the concert, walked down the amphitheater's aisle, and then, turned to continue walking through another row of seating. (*Id.* at p. 8). She was in the middle of the row when she fell on her left side into the affixed seating. (Doc. 25-3, p. 10). Before falling, Plaintiff did not notice anything in her path that would have caused her to trip and fall. (*Id.* at p. 11). When she fell and turned around, however, she saw a candy apple with a stick in its center, sticking straight up. (*Id.*). The candy apple was stuck to the amphitheater's concrete flooring. (*Id.* at pp. 10–11); (Doc. 25-6). It had affixed to the floor, and other than a bite into the candy apple, it was intact when Plaintiff fell. (Doc. 25-4, pp. 8–9). Plaintiff sustained several injuries resulting from her fall. (Doc. 25-3, pp. 16–18). Defendant's duty to maintain the amphitheater in a safe condition is the subject of Plaintiff's lawsuit.

## II. SUMMARY JUDGMENT STANDARD

A principal purpose of the summary judgment rule is "to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Granting summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Each party may support their factual assertions by citing to evidence in the record, including the discovery and disclosure materials on file, affidavits or declarations, stipulations, or other materials. Fed. R. Civ. P. 56(c)(1). When considering a motion for summary judgment, the court evaluates all the evidence, together with any logical inferences, in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). The court may not make credibility determinations or weigh the evidence. *Id.*; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000). Credibility determinations and weighing of the evidence are functions solely of a jury—"not those of a judge." *Anderson*, 477 U.S. at 255.

## III. DISCUSSION

Plaintiff brings a state law negligence claim for Defendant's alleged breach of the duty of ordinary care in maintaining its premises. (Doc. 1). Defendant argues that it is entitled to summary judgment on this claim because Georgia law does not require owners to inspect for and remove trash while guests exit the premises after a large event. (Doc. 25).

4

To prevail on a negligence claim, the plaintiff must establish the essential tort elements of duty, breach of the duty, proximate cause, and damages. *Howell v. Three Rivers Sec., Inc.*, 216 Ga. App. 890, 892 (1995). Under Georgia law, the owner of real property owes a duty to its invitees to exercise ordinary care in keeping its premises safe. O.C.G.A. § 51-3-1. This duty requires owners to protect invitees from "unreasonable risks of harm of which the owner has superior knowledge and to inspect the premises to discover possible conditions" of which the owner has no actual knowledge. *Mayhue v. Middle Ga. Coliseum Auth.*, 253 Ga. App. 471, 472–73 (2002) (quoting *Gunter v. Patterson Bank*, 247 Ga. App. 555, 557–58 (2001)); *see also Brown v. Host/Taco Joint Venture*, 305 Ga. App. 248, 252 (2010) ("[A] proprietor has a duty to inspect the premises to discover possible dangerous conditions and to take reasonable precautions to protect the invitee from foreseeable dangers on the premises . . . .").

To establish liability for injuries sustained in a premises liability case, the plaintiff must demonstrate that: (1) the owner had actual or constructive knowledge of the hazard; and (2) the plaintiff, despite exercising ordinary care for her own safety, lacked knowledge of the hazard due to conditions within the owner's control. *Mayhue*, 253 Ga. App. at 473. Here, no evidence suggests that Defendant had actual knowledge of the candy apple's presence. (Doc. 27, p. 7). No Wild Adventures employees saw Plaintiff fall or were in the immediate area

when she fell. Thus, Plaintiff must rely on Defendant's constructive knowledge to establish her claims.

To avoid liability based on constructive knowledge, an owner must demonstrate "not only that it had a reasonable inspection program in place, but [also] that such program was actually carried out at the time of the incident." *Brown*, 305 Ga. App. at 251 (quoting *Food Lion, Inc. v. Walker*, 290 Ga. App. 574, 576 (2008)). "Constructive knowledge may be inferred when there is evidence that the owner lacked a reasonable inspection procedure." *Id.* Generally, the owner first has the burden to prove its inspection procedures. The burden then shifts to the plaintiff to show that despite these procedures, the hazardous substance remained long enough that the owner "should have discovered" the substance "in the exercise of ordinary diligence." *Mayhue*, 253 Ga. App. at 473. A defendant's failure to discover the hazard for such length of time establishes its breach of the duty of ordinary care.

Plaintiff argues that Defendant had constructive knowledge of the hazardous candy apple because Defendant failed to conduct a reasonable inspection of the amphitheater at and before the time of Plaintiff's fall. (Doc. 27, p. 5). Defendant relies on an exception to the general rule requiring inspection procedures at the time of the incident. (Doc. 25-1). This exception was established in *Daniels v. Atlanta National League Baseball Club, Inc.*, 240 Ga.

App. 751 (1999), and it applies when a hazard causes the plaintiff to fall while exiting a large venue, immediately after an event has ended. *Id.* at 752.

In *Daniels*, the plaintiff attended an Atlanta Braves baseball game. *Id.* at 751. She was an invitee to the stadium. *Id.* The plaintiff slipped and fell on either a cup or liquid from a cup as she walked down the stairs to exit the stadium. *Id.* Like Plaintiff in the present case, the *Daniels* plaintiff relied on the defendant's constructive knowledge of the hazard to establish liability. *Id.* at 752. Thus, the defendant's inspection procedures were at issue. *Id.* The Georgia Court of Appeals, however, excused the defendant from performing inspections while fans exit the stadium. *Id.* The court found that "it would be unduly burdensome, if not impossible, for the Atlanta Braves to perform an inspection for the trash on the stairs while tens of thousands of spectators are exiting the stadium." *Id.* Further, the court explained that fans should expect to find trash in the aisles following a game:

> [A] fan should reasonably expect and assume that trash will be dropped on the premises by the thousands of other fans exiting the stadium at the end of a game. The risk of a cup sitting on the aisle steps is not an 'unreasonable risk of harm' for one exiting a baseball stadium at the end of a game.

*Id.* To hold otherwise, "would effectively make the Atlanta Braves the insurer of the safety of all fans." *Id.* Georgia law is well settled that owners are "not required to warrant the safety of all persons from all things, but to exercise the diligence toward making the premises safe that a good business person is accustomed to

7

use in such matters." *Robinson v. Kroger Co.*, 268 Ga. 735, 740 (1997). In the matter of large sporting events, *Daniels* found that requiring inspection procedures before allowing fans to exit would exceed the bounds of ordinary care. *See* 240 Ga. App. at 752 ("Thousands of fans would be detained in their seats, long after the game was over, waiting for the aisles to be inspected."); *Gibson v. Halpern Enters.*, 288 Ga. App. 790, 792 (2007) ("[A] proprietor has no duty to engage in an unduly burdensome inspection procedure."). The court, therefore, exempted the defendant from proving its inspection procedures, and the burden shifted to the plaintiff to show how long the substance had been on the floor. *Daniels*, 240 Ga. App. at 752.

The Georgia Court of Appeals reiterated this exception in *Mayhue v. Middle Georgia Coliseum Authority*. *See* 253 Ga. App. at 473 (discussing *Daniels* and finding that "[t]he same rationale applies in the instant case"). There, the plaintiff slipped and fell on a container of nacho cheese as he was exiting the Macon Coliseum after attending a circus performance. *Id.* at 472. The court found that the *Daniels* exception applied because it would be "reasonable for a patron of the Macon Coliseum to encounter food on the ground near the concession stand at the end of a circus performance." *Id.* at 473. The hazard did "not pose an 'unreasonable risk of harm,'" so requiring inspection procedures would be "unduly burdensome" considering the large number of spectators exiting the coliseum. *Id.*

Here, Defendant admits Wild Adventures has no inspection procedure in place to clean between rows of seating during the concert. (Doc. 25-5, p. 9). Jon Vigue, the Wild Adventures Assistant General Manager, said that the park has "general policies" for "keeping areas free of debris and trash on a consistent basis." (*Id.*). Employees empty trash bins as they fill up during the concert. (*Id.* at p. 10). They also clean "the aisleways that people would use to get to [the] arena seats." (*Id.*). Defendant's employees do not, however, clean between the rows in the seating area during concerts. (*Id.* at p. 9). Defendant does "not clean [this area] during concerts because [employees] can't safely get into the rows." (*Id.*). Additionally, such a procedure would "get in the way of people during the shows." (*Id.*). According to Vigue, therefore, trash "may accumulate during the show." (*Id.*). But right after the concert ends, Defendant "tak[es] care of those [inspection] processes." (*Id.*).

Under these circumstances, the Court agrees with Defendant that the *Daniels* exception applies in this case. Defendant owns the Wild Adventures amphitheater, where Plaintiff was an invitee. *See Clark Atlanta Univ., Inc. v. Williams*, 288 Ga. App. 180, 181 (2007) ("An invitee is someone whom a landowner, by express or implied invitation, induces or leads to come upon his premises for any lawful purpose."). Between the affixed seating and general

9

admission lawn area, the venue could accommodate over 2,000 guests.[2] On the night in question, according to Plaintiff's testimony, there were at least a few hundred guests inside the amphitheater. And while Defendant did not sell concessions inside the amphitheater, guests were welcome to buy concessions and bring them to their seats. (Doc. 25-5, p. 8); (Doc. 25-3, p. 9). Candy apples were among the concessions sold at Defendant's food court area. (Doc. 25-5, p. 8); (Doc. 25-4, p. 10).

The evidence shows that Plaintiff and her family shared refreshments during the concert. (*Id.* at p. 7). Plaintiff's daughter, Tammy Evans, observed numerous concertgoers eating and drinking inside the amphitheater. (*Id.*) ("They were eating all over the place."). Therefore, Plaintiff was on notice that concertgoers, including her own family, were consuming concessions inside the amphitheater. With potentially thousands of individuals consuming concessions, the risk of someone dropping a candy apple in one of the rows of seating is not an "unreasonable risk of harm" for someone exiting the amphitheater. *Daniels*, 240 Ga. App. at 752. Concertgoers should "reasonably expect and assume" to find concessions litter on the floor. *Id.*

---

[2] Plaintiff asserts that the *Daniels* exception should not apply because the seating capacity at the venues in *Daniels* (approximately 50,000) and *Mayhue* (approximately 9,000) were much larger than the Wild Adventures amphitheater. (Doc. 27, pp. 9–11). This Court finds, however, that a seating capacity of over 2,000 guests still makes inspections unduly burdensome while individuals exit the venue.

10

Given that the risk is reasonable, taking measures such as cleaning the rows of seating while spectators exit would exceed ordinary care. Spectators expect to watch the concert with an unobstructed view. And employees cleaning through the rows of seating throughout the concert would disturb these spectators. *Id.* Thus, requiring Defendant to perform inspections and clean through each row during the concert would be unreasonable. Likewise, requiring at least hundreds of spectators to remain in their seats after the concert ends while Defendant performed inspections and clean up would also be unreasonable and "unduly burdensome" for Defendant. *Daniels*, 240 Ga. App. at 752. Accordingly, the Court will not require Defendant to prove that reasonable inspection procedures were in place and followed at the time of Plaintiff's fall. *See id.*; *Mayhue*, 253 Ga. App. at 473.

The burden shifts to Plaintiff to show how long the candy apple had been on the ground before she fell. *Id.* Plaintiff can establish Defendant's constructive knowledge if she can show that the candy apple remained on the floor long enough such that Defendant should have discovered the candy apple in the exercise of ordinary diligence. *Id.* The length of time the hazard must remain on the floor before the owner should have discovered it depends on the nature of the business, its size, the number of customers present, the nature of the hazard, and the location of the business. *Kroger Co. v. Schoenhoff*, 324 Ga. App. 619,

621 (2013) (quoting *Davis v. Bruno's Supermarkets, Inc.*, 263 Ga. App. 147, 150 (2003)).

According to Plaintiff, the candy apple was stuck to the concrete ground when she tripped over it. (Doc. 25-3, p. 10). Plaintiff argues that it was on the ground "long enough for it to be fused into the concrete." (*Id.* at p. 11); *see* (Doc. 27, p. 11). Removing the apple required Defendant's employees "to take a spoon" to "pry it up because [the apple] wouldn't even come up." (Doc. 25-3, p. 11). Joseph Hager, Wild Adventures' Safety Operations Manager, responded to the call for assistance following Plaintiff's fall. (Doc. 25-6, p. 1). He also found that "[t]he apple was stuck to the concrete floor." (*Id.* at p. 2). He avers, however, that "[a]ny sticky candy would stick to the floor in the warm weather months of the year." (*Id.*).

When Hager saw the candy apple, it "appeared to be intact." (*Id.*). "The apple was not trampled or smashed." (*Id.*). In other words, according to Hager, nothing about the candy apple's appearance suggested that it had been on the concrete very long. (*Id.*). Evans, Plaintiff's daughter, also indicated that the candy apple was intact when she arrived to assist her mother. (Doc. 24-4, p. 8). The candy apple's stick was sticking straight up. (*Id.*). The only damage Evans observed was that someone had taken one bite from the candy apple. (*Id.*). No other evidence in the record suggests precisely how long the candy apple had been on the floor.

The amphitheater's doors opened at 7:00 p.m., and the concert ended at approximately 10:00 p.m. The Court can only assume the candy apple reached the ground sometime during that period.[3] Facing this evidence, a jury would "not [be] authorized to speculate or guess whether the hazard had been there so long that it should have been discovered." *Compton v. Huddle House, Inc.*, 284 Ga. App. 367, 369 (2007); *see also Dildine v. Town & Country Truck Sales, Inc.*, 259 Ga. App. 732, 734 (2003) (denying liability when "the jury would have been forced to rely on speculation or guesswork"). Any factual inference the Court could make as to how long the candy apple was on the floor would be "based on mere possibility, conjecture, or speculation." *Patrick v. Macon Hous. Auth.*, 250 Ga. App. 806, 809 (2001). Such an inference "is not a reasonable inference sufficient to establish a genuine issue of fact and preclude summary judgment." *Id.*; *see Glynn-Brunswick Mem'l Hosp. Auth. v. Benton*, 303 Ga. App. 305, 307 (2010) ("[G]uesses or speculation which raise merely a conjecture or possibility . . . are not sufficient to create even an inference of fact for consideration on summary judgment." (quoting *Brown v. Amerson*, 220 Ga. App. 318, 320 (1996)).

---

[3] On the day of Plaintiff's injuries, the amphitheater was closed to the public until 7:00 p.m. (Doc. 25-5, p. 7). Between 5:00 p.m. and 7:00 p.m., Defendant's cleaning policy is to "verify that there is no trash on the ground and that every single seat in [the] entire amphitheater gets washed to ensure it's dry and free of dust or pollen." (*Id.* at p. 9). Plaintiff does not allege and has not presented evidence to suggest the candy apple was present in the amphitheater before 7:00 p.m.

13

Even if the candy apple reached the floor sometime between 8:00 p.m. and 10:00 p.m., under Georgia law, such length of time could not establish Defendant's liability. Had the candy apple reached the floor any time during the concert or immediately after, such a fact would not satisfy Plaintiff's burden to show that the candy apple remained on the floor long enough to be discovered through "the exercise of ordinary diligence." *Mayhue*, 253 Ga. App. at 473. As discussed above, inspection and cleaning procedures between the amphitheater's rows of seating during or immediately after the concert would have been unduly burdensome. Therefore, inspection and cleaning procedures at that time would have exceeded the ordinary diligence required under Georgia law. In other words, the candy apple would not have been discovered by ordinary diligence if it reached the floor between 8:00 p.m. and 10:00 p.m. And proving that the candy apple was on the floor at that time could not establish Defendant's breach of its duty.

To survive summary judgment, Plaintiff would have to show that the candy apple was on the floor sometime between 7:00 p.m. and 8:00 p.m. when inspection and cleaning procedures were reasonably feasible. No evidence in the record—indicating more than the mere possibility of that timeline—is present. Plaintiff therefore has not satisfied her burden to show that the candy apple had been on the floor long enough that Defendant breached its duty of ordinary care.

14

## IV.  CONCLUSION

Plaintiff has not presented sufficient evidence to demonstrate that Defendant breached its duty of ordinary care in maintaining its amphitheater. Accordingly, Plaintiff's negligence claim fails, and the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. 25).

**SO ORDERED** this 27th day of April, 2020.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

kac